IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

4WALL LAS VEGAS, INC.,

    Plaintiff,                               No. 2:12-cv-2746-KJN

    vs.

MARK TRIEBWASSER, dba STAGE 1, INC., et al.,

    Defendants.                        ORDER

/

        Presently pending before the court is plaintiff 4Wall Las Vegas, Inc.'s application for a writ of possession under California Civil Procedure Code section 512.010, filed on December 19, 2012. (Dkt. No. 12.)[1] Plaintiff, a Nevada corporation, essentially alleges that defendant Mark Triebwasser, a California resident doing business as Stage 1, Inc., and defendant Stage 1, Inc., a California corporation, rented entertainment lighting equipment from plaintiff pursuant to a rent-to-own contract. (Id.) Plaintiff contends that defendants have since defaulted on payments and now illegally retain possession of the equipment. On December 31, 2012, defendants filed an opposition to plaintiff's application, and on January 7, 2013, plaintiff filed a

---

[1] All parties consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c) (dkt. nos. 8, 25, 26), and the action was referred to the undersigned for all further proceedings and entry of final judgment. (Dkt. No. 27.)

1

1  reply brief.  (Dkt. Nos. 14, 16.)

2  The court held a hearing on this matter on February 14, 2013.  (Dkt. No. 28.)
3  Hank Burgoyne appeared on behalf of plaintiff and Nicholas Yonano appeared on behalf of
4  defendants.  For the reasons discussed at the hearing, the court issued an order on February 15,
5  2013, requiring the parties to submit supplemental briefing/declarations on specified matters.
6  (Dkt. No. 30.)  Plaintiff submitted a supplemental declaration on February 21, 2013, and
7  defendants submitted a supplemental declaration on February 28, 2013.  (Dkt. Nos. 31, 32.)

8  After considering the parties' briefing and supporting documentation, the parties'
9  oral argument at the hearing, and other appropriate portions of the record, the court grants
10 plaintiff's application along the terms outlined in this order.

11 BACKGROUND

12 Plaintiff and defendants are all in the business of renting out or supplying
13 entertainment equipment for the entertainment and wedding industries.  This dispute stems from
14 defendants' alleged default on a rent-to-own contract with plaintiff involving certain
15 entertainment lighting equipment ("Equipment").

16 On or around July 18, 2011, plaintiff provided defendants with a "Quote" for the
17 sale of the Equipment, described as a sale of used equipment, for a total price of $53,961.50,
18 providing for "6 equal monthly payments of $7,752.59 + shipping."  (Dkt. No. 14-2 at 6-7; Dkt.
19 No. 16 at 20-21.)  On July 22, 2011, defendants sent an e-mail to plaintiff, requesting to add
20 some inventory to the equipment list and to "discuss the terms."  (Dkt. No. 16 at 19-20.)  In
21 particular, defendants desired to alter the payment plan in the Quote to allow for smaller
22 payments of $3,000 to $3,500 over a longer period of time.  (Id.)  The next day, plaintiff's CEO
23 responded:

24 > Because I trust you - I will agree to your proposal.  Mancuso will
> put the agreement together.  Please be aware that this equipment
25 > will leave as a rental and the title of ownership will not pass until
> the final payment is made.  In the event you return the equipment
26 > for some reason, any payments made will be deemed rental and

2

1        therefore non refundable.

2 (Dkt. No. 16 at 19.)

3        Thereafter, on August 3, 2011, plaintiff provided defendants with a document titled "Order," which described the parties' agreement as a "RENT TO OWN" agreement and which listed the Equipment to be rented under a heading titled "RENTAL."  (Dkt. No. 16 at 23-25.)  The Order valued the Equipment at approximately $54,691.50.  (Dkt. No. 16 at 25.)  Defendants signed the Order that same day, and just above defendant Triebwasser's signature, the Order states that the agreement provides for monthly payments of $3,500 starting October 1, 2011, and that "[t]he equipment will leave as a rental.  In the event Stage 1, Inc. returns the equipment for some reason, any payments made to 4Wall Enterprises will be deemed a rental and therefore is non refundable."  (Dkt. No. 16 at 25.)

        On August 3, 2011, plaintiff additionally provided defendants with a document titled "Out Contract," which also described the parties' agreement as a "RENT TO OWN" agreement and which also listed the Equipment to be rented under a heading titled "RENTAL."  (Dkt. No. 16 at 27-29; Dkt. No. 31-1 at 1-4.)  Defendants signed the Out Contract, which states, on the bottom of each page, that "SIGNATURE ACKNOWLEDGES AND ACCEPTS TERMS AND CONDITIONS ON REVERSE SIDE."  (Id.)  The terms and conditions on the reverse side repeatedly refer to the agreement as a rental agreement and specifically states, in part:

> It is expressly understood that this is a rental contract and does not involve a purchase agreement.  Title to the Equipment shall at all times be vested in 4WALL, and no right, title or interest in the Equipment shall pass to Customer other than the right to possess and use the Equipment for the full Rental Term, which right is conditioned upon Customer's compliance with and fulfillment of the terms and conditions of the Agreement.

(Dkt. No. 31-1 at 4.)[2]

---

[2] At the hearing there was some confusion regarding exactly what terms and conditions were printed on the reverse side of the Out Contract.  Although plaintiff's reply brief cited to these terms and conditions, plaintiff (in an apparent oversight) did not attach a copy of the reverse side of the Out Contract.  (See Dkt. No. 16 at 3-4, 27-29.)  Defendants' counsel at the

3

Thus, according to plaintiff, defendants were generally required to make monthly rental payments of $3,500 until the total amount of $54,691.50 (the stated value of the Equipment) was paid, at which point ownership of the Equipment would transfer to defendants. (Dkt. No. 16 at 14; Dkt. No. 18 at 1-2.) However, if defendants were to default prior to paying plaintiff the full $54,691.50, defendants would be required to return the Equipment and all prior payments made by defendants would be deemed as non-refundable, rental payments. (Id.)

Defendants started making payments in September/October 2011, but around December 2011, defendants began falling behind in making timely payments. (Dkt. No. 16 at 14; Dkt. No. 18 at 2.) Defendants made two payments of $3,500 each around February 5, 2012, and two more $3,500 payments around March 12, 2012, which brought their account current to February 2012. (Id.) However, defendants again failed to make the March 2012 payment and continued to default on payments in the following months, without returning the Equipment. (Dkt. No. 16 at 14-15; Dkt. No. 18 at 2.)

////

---

hearing presented a purported copy of such terms and conditions, which indicated that the parties' agreement was actually a sales agreement and not a rental agreement. Plaintiff's counsel observed that while the copy presented by defendants' counsel was an actual boiler form utilized by plaintiff, it did not appear to be the terms and conditions from the reverse side of the Out Contract at issue here. Plaintiff's counsel suggested that the document presented by defendants' counsel was possibly provided to defendants in connection with a previous sales transaction between the parties. (See also Dkt. No. 31 at 2.) Plaintiff's counsel agreed to file a declaration attaching a copy of the terms and conditions on the reverse side of the Out Contract, as it appeared in plaintiff's files. (Dkt. No. 30.) In the event that defendants disputed the accuracy of that filing, defendants were permitted to file a response indicating such dispute, attaching their own version of the purported terms and conditions on the reverse side of the Out Contract. (Id.) On February 21, 2013, plaintiff filed a complete version of the Out Contract from its files, including the terms and conditions on the reverse side, which supported plaintiff's quotes and citations in the reply brief. (Dkt. No. 31-1.) Although defendants filed a response on February 28, 2013, defendants did not materially dispute the accuracy of plaintiff's February 21, 2013 filing and did not file any alternate version of the document. (Dkt. No. 32.) Accordingly, the court accepts plaintiff's version of the document for purposes of this application. In any event, even if the document presented by defendants' counsel at the hearing were accepted as the actual terms and conditions on the reverse side of the Out Contract, the court would be reluctant to conclude that such inconsistent boilerplate terms on the back of the document trump the parties' specifically-negotiated terms in the actual body of the Out Contract.

Around mid-August 2012, with defendants still in arrears, plaintiff agreed to amend the agreement's payment schedule. (Dkt. No. 16 at 15; Dkt. No. 18 at 2.) This amended payment schedule was memorialized in an August 29, 2012 letter from plaintiff to defendants, emphasizing that the Equipment would have to be returned if defendants failed to meet the amended payment schedule. (Dkt. No. 16 at 15, 31; Dkt. No. 18 at 2-3.) Thereafter, at defendants' request, plaintiff agreed to yet another modification of the payment schedule, memorialized via email on August 24, 2012.[3] (Dkt. No. 16 at 15-16, 33-34; Dkt. No. 18 at 3.) The further amended payment schedule required five monthly payments of $6,000, due on the 30th of each month, starting on August 30, 2012. (Id.) The memorializing e-mail from plaintiff stated, in part:

> Again, If you cant afford the equipment, which it appears you can[']t. Send it back!!! Which I'm strongly advising you to do NOW! If you miss any of the 5 payments which is due the 30th of the month, we will force you to return it all and consider any payments made RENT! So, again if you don't feel like you can make any of the 5 payments ON TIME, then send it ALL back now and save yourself from further loss.

(Dkt. No. 16 at 33.)

Around August 31, 2012, defendants defaulted on the first payment of the further amended payment schedule, paying only $1,000 instead of the agreed-upon $6,000. (Dkt. No. 16 at 16; Dkt. No. 18 at 3.) This was the last payment plaintiff received from defendants. (Id.) It is undisputed that defendants are $29,000 behind in rental payments, having made over $25,000 in payments on the Equipment. (Id.; see also Dkt. No. 32 at 2.)

Plaintiff commenced this action on November 6, 2012, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1.) The operative second amended complaint asserts claims against defendants for (1) breach of contract; (2) breach of the covenant

---

[3] In its reply, plaintiff clarified that the sender of the August 29, 2012 letter did not know of the subsequent further amendment to the payment schedule. (Dkt. No. 16 at 15.) For this reason, the moot August 29, 2012 letter was sent after the parties had actually agreed to a further amended payment schedule.

5

of good faith and fair dealing; (3) conversion; (4) fraud and deceit - intentional misrepresentation; and (5) breach of quasi-contract. (Dkt. No. 20.)[4]

On December 19, 2012, plaintiff filed the instant application for a writ of possession under California Civil Procedure Code section 512.010. (Dkt. No. 12.)

LEGAL STANDARD

Federal Rule of Civil Procedure 64 states, in pertinent part:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Fed. R. Civ. P. 64(a); Western Oil Fields Supply v. Goodwin, 2008 WL 4500195, at *2 (E.D. Cal. Oct. 4, 2008). California law provides for the return of property to creditors via a writ of possession. Cal. Civ. Proc. Code § 512.010(a) ("Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this chapter for a writ of possession by filing a written application for the writ with the court in which the action is brought"). The application must include:

> (1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of the instrument shall be attached.
>
> (2) A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and, according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.
>
> (3) A particular description of the property and a statement of its value.
>
> (4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may

---

[4] Defendants also filed counterclaims and crossclaims for libel and slander, which are not relevant to plaintiff's application for a writ of possession. (Dkt. No. 13.)

>
> have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.
>
> (5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

Cal. Civ. Proc. Code § 512.010(b). Furthermore, California Civil Procedure Code section 512.060 provides that:

> (a) At the hearing, a writ of possession shall issue if both of the following are found:
>
> (1) The plaintiff has established the probable validity of the plaintiff's claim to possession of the property.[5]
>
> (2) The undertaking requirements of Section 515.010 are satisfied.
>
> (b) No writ directing the levying officer to enter a private place to take possession of any property shall be issued unless the plaintiff has established that there is probable cause to believe that the property is located there.

DISCUSSION

For the reasons outlined below, the court finds that plaintiff has complied with the requirements of, and made a sufficient showing under, California Civil Procedure Code sections 512.010 and 512.060 for the issuance of a writ of possession.

Requirements under Cal. Civ. Proc. Code § 512.010

*The Basis of Plaintiff's Claim; Plaintiff's Entitlement to Possession; and*

*Defendant's Wrongful Detention of the Property [§ 512.010(b)(1)-(2)]*

The declarations and documentation in support of plaintiff's application, in particular the August 3, 2011 Order and Out Contract, show that plaintiff and defendants entered into a rent-to-own agreement concerning the Equipment, whereby defendants were to make

---

[5] "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code § 511.090.

7

1  monthly rental payments to plaintiff until the total value of the Equipment was paid off, at which
2  point ownership of the Equipment would transfer to defendants.  However, if defendants were to
3  default prior to paying plaintiff the full amount, defendants would be required to return the
4  Equipment, and all prior payments made by defendants would be deemed as non-refundable,
5  rental payments.  (See Dkt. No. 16 at 14, 23-25, 27-29; Dkt. No. 18 at 1-2; Dkt. No. 31-1 at 1-4.)
6  It is undisputed that defendants came into possession of the Equipment by virtue of the parties'
7  agreement and that defendants are presently $29,000 behind in their payments.  (Dkt. No. 16 at
8  16; Dkt. No. 18 at 3; see also generally Dkt. Nos. 14-2, 32.)  Thus, despite two amendments to
9  the payment schedule, defendants have been in default under the parties' agreement for a
10 significant period in time, but have nonetheless failed to return the Equipment in accordance with
11 the agreement.  Plaintiff indicates that, to the best of its knowledge, information, and belief,
12 defendants are detaining the Equipment for occasional continued rental to third parties, and for
13 leverage in negotiations with plaintiff to further amend or reduce the payment schedule.  (Dkt.
14 No. 16 at 16; Dkt. No. 18 at 4.)  At the hearing, defendants' counsel stated that defendants
15 needed the Equipment for continuation of their business and were still renting out the Equipment
16 for short terms.  (See also Dkt. Nos. 14 at 5, 14-2 at 3.)

17         In light of the above, plaintiff has made a sufficient showing, at least for purposes
18 of this application for a writ of possession, that it is entitled to possession of the Equipment and
19 that defendants are wrongfully detaining the Equipment.

20         Defendants, in reliance on the July 18, 2011 Quote, argue that the parties did not
21 enter into a rent-to-own agreement, but in fact had an agreement to sell the Equipment to
22 defendants.  This argument lacks merit, because the July 18, 2011 Quote cannot reasonably be
23 construed as a binding offer by plaintiff that defendants accepted.  "Under California law...a
24 binding offer 'is the manifestation of willingness to enter into a bargain, so made as to justify
25 another person in understanding that his assent to that bargain is invited and *will conclude it*.'
26 There is a binding offer only if it is reasonable to conclude, based on 'all the surrounding

circumstances,' that acceptance will leave nothing further to negotiate or do before the contract is effective." Rubio v. Capital One Bank, 613 F.3d 1195, 1205 (9th Cir. 2010) (citing Donovan v. RRL Corp., 26 Cal. 4th 261, 271 (2001)).

Here, the fact that the July 18, 2011 document is titled as a "Quote" in itself suggests that it is a mere price quotation submitted as part of the parties' preliminary negotiations. This conclusion is confirmed by the fact that, in contrast to the subsequent August 3, 2011 Order and Out Contract, the Quote does not contain a signature line, and in fact was not signed by either party. (Dkt. No. 14-2 at 6-7.) As such, defendants could not reasonably have understood that assent to the Quote would conclude the bargain. In fact, the parties' subsequent correspondence, outlined above, including defendants' request to further discuss the terms and their eventual execution of the Order and Out Contract, demonstrate that, aside from any reasonableness inquiry, defendants did not even actually consider the Quote a binding offer. Thus, defendants' argument that the UCC, as adopted by California, allows for contract formation even though an acceptance of an offer changes some terms, is irrelevant, because those provisions assume the existence of a binding offer. As discussed above, the Quote could not reasonably be construed as a binding offer subject to acceptance.

Moreover, even assuming *arguendo* that the Quote were a binding offer and that defendants accepted it, there can be little doubt that the parties' agreement was subsequently modified in writing along the terms of the Order and Out Contract, signed by defendants. Marani v. Jackson, 183 Cal. App. 3d 695, 704 (1986) (recognizing that a contract in writing may be modified by a contract in writing); see also Cal. Civ. Code § 1698(a).

Finally, defendants also argue that plaintiff is not entitled to possession and that a writ should not issue, because defendants never made any statements or took any actions indicating that they were not going to make the remaining payments or that they intended to dispose of or otherwise transfer the Equipment. While the court does not question defendants' good intentions with respect to eventually making the payments or safeguarding the Equipment,

defendants have been in default for a significant period of time. Defendants agreed to return the Equipment upon default, and plaintiff is not required to grant defendants any additional time to make the payments. Indeed, as discussed above, plaintiff has already twice amended the payment schedule at defendants' request. While the court is sympathetic to defendants' need for the Equipment to operate their business, such concerns do not preclude the granting of plaintiff's application for a writ of possession.

*Particular Description of Property and Statement of Its Value*
*[§ 512.010(b)(3)]*

The Order, attached to plaintiff's application, provided an itemized list of the Equipment provided to defendants pursuant to the parties' agreement, including a description and value of each specific item, for a total value of $54,691.50. (Dkt. No. 12 at 8-10; Dkt. No. 16 at 23-25.) Thus, plaintiff has provided a particular description of the property and a statement of its value.

*Probable Cause Regarding Location of Property [§ 512.010(b)(4)]*

Plaintiff states that, according to its best knowledge, information, and belief, the Equipment is located at the address of defendant Stage 1, Inc. at 612-B Figueroa Street, Unit G, Folsom, CA 95630, which is a private place that may have to be entered to take possession of the Equipment. Plaintiff's belief is based on the fact that this is defendants' primary place of business and where defendants have their primary equipment storage facilities. (Dkt. No. 16 at 16; Dkt. No. 18 at 4.) This address also appears on the Order, the Out Contract, and the communications between plaintiff and defendants. Indeed, defendants' counsel stated at the hearing that the Equipment was either at this address or possibly at the address of a third-party customer for purposes of a short-term rental. Therefore, plaintiff has shown probable cause to believe that the Equipment is in fact at the aforementioned address.[6]

---

[6] The mere possibility that some or all of the Equipment may be rented out and not found at defendants' place of business at the exact time that a writ is executed is not sufficient to

*Statement That Property Had Not Been Taken for a Tax, Assessment, or Fine Pursuant to Statute; or Seized Under an Execution Against Plaintiff's Property [§ 512.010(b)(5)]*

Plaintiff stated, and defendants do not dispute, that the Equipment had not been taken for a tax, assessment, or fine pursuant to statute; or seized under an execution against the property of plaintiff. (Dkt. No. 12 at 5.)

Accordingly, the court concludes that the requirements of California Civil Procedure Code section 512.010 have been satisfied.

Requirements under Cal. Civ. Proc. Code § 512.060

As outlined above, California Civil Procedure Code section 512.060 sets forth additional requirements before the writ may issue. Two of the three requirements under this section are duplicative of requirements under section 512.010 – plaintiff's establishment of the probable validity of plaintiff's claim to possession of the property and plaintiff's showing of probable cause that the property at issue is located at the private place to be entered to seize the property. Cal. Civ. Proc. Code § 512.060(a)(1), (b). For the reasons discussed above, plaintiff has already established the probable validity of its claim to possession of the Equipment, as well as probable cause that the Equipment is located at the above-mentioned address of defendants' business. Therefore, the only issue remaining is whether the undertaking requirements of California Civil Procedure Code section 515.010 have been satisfied. Cal. Civ. Proc. Code § 512.060(a)(2).

Section 515.010 requires plaintiff to file an undertaking in an amount of not less than twice the value of the defendant's interest in the property. However, if the court finds that the defendant has no interest in the property, then "the court shall waive the requirement of the

---

destroy the probable cause that the Equipment is at defendants' place of business. Furthermore, according to plaintiff, defendants have claimed that their equipment rental business has fallen off dramatically in the past several months, so as to make it even less likely that the Equipment would be in the hands of a third-party customer. (Dkt. No. 16 at 16-17; Dkt. No. 18 at 4.)

11

plaintiff's undertaking and shall include in the order for issuance of the writ the amount of the defendant's undertaking[7] sufficient to satisfy the requirements of subdivision (b) of Section 515.020." Cal. Civ. Proc. Code § 515.010.  In turn, section 515.020(b) provides:

> The undertaking shall state that, if the plaintiff recovers judgment on the action, the defendant shall pay all costs awarded to the plaintiff and all damages that the plaintiff may sustain by reason of the loss of possession of the property. The damages recoverable by the plaintiff pursuant to this section shall include all damages proximately caused by the plaintiff's failure to gain or retain possession.

Cal. Civ. Proc. Code § 515.020(b).

In this case, defendants have no interest in the Equipment, because, as outlined above, the parties' agreement provides that defendants must return the Equipment and forfeit all prior payments as non-refundable rent payments, if defendants default.  Because defendants are in default and have not paid off the full value of the Equipment, they have not obtained any interest in the property.  As such, although plaintiff has obtained an undertaking out of abundance of caution, the court waives the requirement of plaintiff's undertaking.

Determining the amount of defendants' undertaking pursuant to California Civil Procedure Code § 515.010(b) and § 515.020(b) is more complicated.  Plaintiff continued to work with defendants until the end of August 2012 by modifying the payment schedule.  However, it appears that the agreement broke down entirely around August 31, 2012, when defendants made their last partial payment of $1,000, still owing $29,000.  (Dkt. No. 16 at 16; Dkt. No. 18 at 3.)  Thus, at least as of the beginning of September 2012, plaintiff was entitled to return of the Equipment, valued at approximately $54,691.50, plus lost opportunity damages resulting from plaintiff's inability to rent the Equipment out to others.  According to plaintiff, total average weekly rental for the Equipment is $1,596.32, as calculated from its business records.  (Dkt. No.

---

[7] The California Civil Procedure Code also allows a defendant to file an undertaking to prevent the plaintiff from taking possession of property pursuant to a writ of possession or to regain possession of property so taken.  Cal. Civ. Proc. Code § 515.020(a).

31 at 2-3.) Thus, the court could set the undertaking at an amount of $54,691.50 plus the lost rental income from September 2012 to the present. Although defendants argue that they are entitled to an offset of their prior payments against this amount, defendants actually forfeited such payments as non-refundable rental payments upon their default.

However, in considering the equities, the court notes that plaintiff was willing to effectively sell the Equipment to defendants for $54,691.50, and that defendants have already made over $25,000 in payments. Additionally, as defendants point out, the value of the Equipment has no doubt depreciated, although no party has submitted any calculations in that regard. Furthermore, with respect to lost rental opportunity damages, plaintiff has not affirmatively shown that it typically has sufficient demand to have rented out items like the Equipment on a constant basis from September 2012 to the present. Defendants also contend that plaintiff's assessment of the lost rental opportunity damages only addresses revenue and fails to note costs and expenses related to the rental of the Equipment.

Based on the limited record before the court, and in an attempt to balance the various unknown factors, the court finds that $54,691.50 (the approximate value of the Equipment as agreed to by the parties on August 3, 2011) is an appropriate amount for defendant's undertaking. It allows for some lost rental opportunity damages (the approximately $25,000 already paid) while at the same time accounting for depreciation of the value of the Equipment.

<u>Levy of the Writ of Possession</u>

Although the court's order directs the Clerk of Court to presently issue a writ of possession, the court finds it appropriate to stay levy of the writ of possession for a period of seven (7) calendar days from the date of filing of this order, to allow defendants to either provide the required undertaking or turn over the Equipment to plaintiff without the assistance of a levying officer. Upon expiration of the seven-day period, the writ of possession may be levied or executed without further delay.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

1. Plaintiff's application for a writ of possession under California Civil Procedure Code section 512.010 (dkt. no. 12) is GRANTED along the terms outlined in this order.

2. The Clerk of Court shall immediately issue a writ of possession directing the Sheriff of Sacramento County, California (or any other sheriff or marshal within whose jurisdiction the property is located), as the levying officer, to levy on and seize the Equipment (which includes various items of entertainment lighting equipment), described in particularity in Exhibit 1 to plaintiff's application for writ of possession (see dkt. no. 12 at 7-10), pursuant to California Civil Procedure Code section 514.010.  The levying officer shall retain the Equipment in custody until released or sold pursuant to California Civil Procedure Code section 514.030.  The levying officer shall further comply with all applicable requirements of California Civil Procedure Code sections 514.010-514.050.  Notwithstanding the foregoing, levy of the writ of possession shall be stayed for a period of seven (7) calendar days from the date of filing of this order, to allow defendants to either provide the required undertaking, specified below, or turn over the Equipment to plaintiff without the assistance of a levying officer.  Upon expiration of the seven-day period, the writ of possession may be levied or executed without further delay.

3. The Clerk of Court is directed to attach a copy of this order to the writ of possession.

4. The court finds that plaintiff has shown probable cause to believe that the Equipment is located at defendants' place of business.  Accordingly, when levying the writ of possession, the levying officer may enter the premises of Stage 1, Inc. at 612-B Figueroa Street, Unit G, Folsom, CA 95630 for purposes of seizing the Equipment, or some portion of it.

5. If the Equipment, or some portion thereof, cannot be found at the foregoing address, plaintiff may apply ex parte in writing to this court for an endorsement on the writ directing the levying officer to seize the property at a private place not specified in the writ in

accordance with California Civil Procedure Code section 512.090.

6. Pursuant to California Civil Procedure Code section 512.070, defendants are further directed to transfer possession of the Equipment to plaintiff. *Defendants are cautioned that failure to turn over possession of the Equipment to plaintiff may subject defendants to being held in contempt of court.*

7. Defendants are informed that they may prevent levy of the writ of possession, or obtain redelivery of the Equipment after levy of the writ of possession, if they file an undertaking pursuant to California Civil Procedure Code section 515.020 in the amount of $54,691.50.

IT IS SO ORDERED.

DATED: March 8, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE